## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**IKECHI KALLYS ALBERT,**

**Plaintiff,**

**v.**

**SANDY LARSON, Program Director
(Shadyview) in her individual
capacity and as an employee of
Thomas Allen, Inc.; FAY
LINSCHEID, Director, Human
Resources, in her individual
capacity and an employee
of Thomas Allen, Inc.; SANDY
QUINN, Administrator, in her
individual capacity and as an
employee of Thomas Allen, Inc.;
THOMAS ALLEN, INC.; MINNESOTA
DEPARTMENT OF EMPLOYMENT
AND ECONOMIC DEVELOPMENT,**

**Defendants.**

**MEMORANDUM AND ORDER
Civil File No. 05-1632 (MJD/SRN)**

---

Ikechi Kallys Albert, pro se.

Mary K. Martin, Martin Law Offices, Counsel for Defendants.

_____

## I.   INTRODUCTION

This case arises from Plaintiff's termination of employment. The case is now

before the Court on the Corporate Defendants' Motion to Dismiss the Complaint

For Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) [Doc. No. 8], and

Plaintiff's Motions for a Preliminary Injunction, to Appoint Counsel, and for

1

Sanctions Against Defendants [No Doc. Nos.].  Oral argument was heard on December 15, 2005.

## II.   BACKGROUND

Since this case is before the Court on Defendants' motion to dismiss, the Court must take Plaintiff's facts as true, and draw all reasonable inferences from the Complaint most favorably to Plaintiff. <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990). Thus, for purposes of this motion only, the Court will construe the facts in the light most favorable to Plaintiff.

Plaintiff, a Nigerian-born immigrant, began working for Defendant Thomas Allen, Inc. ("TAI") in 1997. Plaintiff worked as a program counselor providing direct care services to people with developmental disabilities.

On September 2, 2004, Plaintiff wrote a letter to his Director expressing his concern over injuries to some of the clients in Defendants' homes and what Plaintiff perceived as the Director's improper handling of prior verbal reports of such incidents. On October 4, 2004, Plaintiff reported to the Director that Ronni Bergland, a Caucasian female employee, failed to come to work and did not call in to say she would be absent. The next day, the Director explained the reasons for Bergland's absence to Plaintiff. From this time on, a hostile relationship existed between Plaintiff and the Director, which included "frivolous and scurrilous

allegations against Plaintiff" regarding such things as unexcused absences from work and receiving personal phone calls at work. (Compl. ¶ XI.)

On October 24, 2004, Plaintiff wrote to the Director with concerns over the disparate treatment he was receiving "because of his sex, national origin and marital status." (Id. ¶ XII.) Specifically, Plaintiff stated that the was not receiving the same opportunities as white employees regarding schedule adjustments and the ability to bring his children to work when in a day care bind. The Director responded to this communication on November 3, stating that all employees are expected to be on time for work, work only their scheduled hours, and call if they are going to be late. On December 10, 2004, Plaintiff reported to the Director that two clients had been injured as a result of falling out of bed, and that Plaintiff was greatly concerned that injuries were continuing to occur without any noticeable action or reprimands to the employees involved. Acrimony existed between Plaintiff and his Director over these issues.

On February 18, 2005, Plaintiff applied for a leave of absence for March 23 through April 21. Plaintiff takes this leave every year to "cater, visit, and tend to his children and other family members living in Nigeria, Africa." (Id. ¶ IV.) Plaintiff had never before had to find his own replacement to cover his shifts when he went to Nigeria, and prior to that time, it had not been company policy to require employees to find their own replacements before being approved for

leaves. The Administrator, Defendant Quinn, had the responsibility to determine the specific terms of Plaintiff's leave and to submit the approved leave to the Director of Human Resources, Defendant Linscheid. The leave was granted on February 23. On that same day, the Director sent Plaintiff a memo questioning Plaintiff's entitlement to earn more PTO,[1] and informing Plaintiff of additional conditions he would need to meet before earning anymore PTO time. On February 24, Plaintiff responded to the memo, stating that the terms and conditions that the Director imposed were unprecedented and discriminatory, and that other employees were not required to abide by such conditions.

On February 26, following another client injury, Plaintiff wrote in the employee communications book "concerning the frequent and continuous unexplained injuries [to patients] of the preceding week." (Id. ¶ XVIII.) On March 2, the Director wrote Plaintiff a memo stating that he would need to complete and submit a "staff request for leave of absence form" to request his leave of absence. That same day, the Director sent Plaintiff another memo in which she said that she and Human Resources had discussed his February 24 note, and that the Director would like to meet with Plaintiff to resolve his concerns.

---

[1]The Court assumes that "PTO" stands for "personal time off" or something similar.

At the meeting to discuss these issues, Plaintiff reiterated his concerns that he was being subject to discriminatory treatment regarding rigid scheduling and the ability to earn PTO since "all the other employees, mainly Caucasian employees were not subjected to such terms and conditions." (<u>Id.</u> ¶ XX.) Plaintiff backed up his claims by citing incidents wherein Caucasian employees were allowed to get away with absenteeism, tardiness, and "no shows," and were allowed to earn PTO without being subject to the terms and conditions that Plaintiff was now subject to. Plaintiff also reminded those at the meeting that he had documented his disparate treatment and that he would be willing to "address this to any level." (<u>Id.</u> ¶ XXIII.) Plaintiff was told that this meeting was about Plaintiff, not other employees, and that Plaintiff would need to comply with the terms and conditions set by the Director, or cease earning benefits. At the end of this meeting, the Director handed Plaintiff a copy of his February 18 leave application containing a notation by Sandy Quinn, TAI's Administrator, that stated the following: "3/10/05 – Due to the financial status o [sic] TAI at this time, general leaves must be covered by PT or O/C staff that will not go into overtime to cover the shifts for the person requesting the general leave." (<u>Id.</u> ¶ XXIV.)

No Caucasian employee has to find his or her own replacement as a condition of receiving leave, and no Caucasian employee has been terminated for failing to find such a replacement. In addition, certain Caucasian TAI employees

are allowed to miss work, come in late, keep flexible schedules, and bring their children to work while black Nigerian employees are not able to do so.

Plaintiff went to Nigeria as planned, and on April 21 received correspondence in the mail from TAI which apparently included the following: (1) a statement that Plaintiff had resigned from his job and was not eligible for rehire, (2) correspondence alleging Plaintiff altered his shift schedule without permission, (3) notification that Plaintiff had violated company policy, (4) information regarding Plaintiff's attendance and punctuality, and (5) a denial of Plaintiff's leave request, dated March 24, one day after Plaintiff left for Nigeria. Plaintiff tried to contact TAI regarding this correspondence, but his phone calls were not returned. Plaintiff wrote a letter to  Program Director Sandy Larson, Director of Human Resources Fay Linscheid, Administrator Sandy Quinn, and Human Resources Manager Kim Dunnigan that outlined the chronology of events leading to Plaintiff's "purported resignation of employment." (Id. ¶ XXIX.) Plaintiff applied for, and was denied, unemployment benefits based on TAI's "ex parte communications" with the State Department of Employment and Economic Development. (Id. ¶¶ XXX-XXXII.)

TAI's statement that Plaintiff was denied leave because of the company's financial situation and because Plaintiff failed to comply with certain requirements for leave is wrong since the leave had been granted on February 23. Moreover,

the State improperly communicated with TAI during the pendency of Plaintiff's application for unemployment benefits.

In addition to the above, Fay Linscheid and another female employee conspired together and made a false allegation of sexual harassment against Plaintiff to "get even with Plaintiff." (Id. ¶¶ XLII-XLIII.) Based on this allegation, Linscheid imposed employment restrictions on Plaintiff.

In the Complaint, Plaintiff alleges that Defendants discriminated against him on the basis of his race, sex, familial status, and national origin in violation of Title VII of the Civil Rights Act, the Minnesota Human Rights Act ("MHRA"), and the Minnesota Family Leave Act. Plaintiff further alleges that Defendants violated his First, Fifth, Sixth, Ninth, Thirteenth, and Fourteenth Amendment rights and 42 U.S.C. §§ 1983 and 1985. Plaintiff seeks damages for these violations, and also seeks to have his unemployment compensation proceeding removed to federal court.

## III.   DISCUSSION

The Minnesota Department of Employment and Economic Development ("Department") is a defendant in this case. The TAI Defendants served notice of the instant motion on the Department, but the Department has not responded.

### A.   **Plaintiff's Request to Transfer His Unemployment Appeal to this Court**

After Plaintiff was terminated, he filed an application for unemployment benefits and was denied. At the time Plaintiff filed the Complaint in this case, he had appealed that decision. At oral argument, the Court was informed that Plaintiff's administrative appeal was denied, and that the time had run for Plaintiff to appeal to the Minnesota Court of Appeals. In his Complaint, Plaintiff stated that he wants to remove his unemployment benefits claim from the state process and have this Court decide his claim.

Minnesota statutes provide a structured process for appealing decisions regarding the award of unemployment benefits. Minn. Stat. § 268.105. Appeals from initial denials are heard by employment law judges. Id., Subd. 1, 2. The Minnesota Court of Appeals reviews final decisions of unemployment law judges. Id., Subd. 7.

Plaintiff's request is denied. The Minnesota Court of Appeals has jurisdiction over unemployment appeals, not this Court. To the extent Plaintiff arguably implicates the Department as a state actor in his federal claims, those claims are all based on the Department's denial of unemployment benefits, and the Court does not have jurisdiction over those claims. Accordingly, all claims against the Department are dismissed. In the following discussion, any reference to "Defendants" only includes the TAI Defendants, not the Department.

8

## B.   Plaintiff's Federal Law Claims

As noted earlier, the Court must construe the allegations in the pleadings in a light most favorable to the nonmovant, including taking the facts alleged in the Complaint as true. <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990). The Complaint should be liberally construed in Plaintiffs' favor and should not be dismissed under Rule 12(b)(6) unless it appears that Plaintiff can prove "no set of facts which would entitle him to relief." <u>Id.</u> Under this standard, dismissal is granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." <u>Gebhardt v. ConAgra Foods, Inc.</u>, 335 F.3d 824, 829 (8th Cir. 2003) (quoting <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 546 (8th Cir. 1997)).

### 1.   Family Medical Leave Act Claims

The Family Medical Leave Act of 1993 ("FMLA") was enacted to allow employees to take reasonable leave for medical purposes. 29 U.S.C. § 2601 <u>et</u> <u>seq</u>. Under the FMLA, an eligible employee is entitled to a total of twelve weeks of leave during any twelve month period for any of the following reasons:

> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

> .    .    .

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition. [or]

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1). An employer may not retaliate against an employee for exercising his rights under the FMLA. 29 U.S.C. § 2615(a).

Plaintiff argues that he was retaliated against for exercising his rights under the FMLA. However, the Complaint does not state that Plaintiff's trip was anything other than his usual annual trip to Nigeria to visit family. Plaintiff does not claim that he or one of his family members was ill or that he was becoming a father.[2] Thus, Plaintiff has failed to state a claim upon which relief can be granted under the FMLA, and all Plaintiff's claims under the FMLA are dismissed.

### 2. **Title VII Claims**

Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Before a person can file a lawsuit based on violations of

---

[2] At oral argument, Plaintiff stated that one of his children living in Nigeria is ill. However, in deciding a motion to dismiss, the Court may not consider matters outside the pleadings. Plaintiff does not mention any illness in his Complaint, and therefore the Court will not consider this argument.

Title VII, he must first exhaust the administrative procedures outlined in 42 U.S.C. § 2000e-5. Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1024-25 (8th Cir. 2004). See also D.W. v. Radisson Plaza Hotel Rochester, 958 F. Supp. 1368, 1373 (D. Minn.1997) (stating that a charge filed with either the EEOC or the Minnesota Department of Human Rights ("MDHR") will satisfy the exhaustion requirement). "[E]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Duncan, 371 F.3d at 1024 (quotation omitted).

The Complaint is silent regarding any EEOC or MDHR filing or any attempt to exhaust administrative remedies. Thus, on the face of the Complaint, Plaintiff has not exhausted his administrative remedies and his Title VII claims are not properly before the Court. Accordingly, Plaintiff's Title VII claims are dismissed.

## 3.   **Constitutional Claims**

The Complaint alleges various constitutional violations under the First, Fifth, Sixth, Ninth, Thirteenth, and Fourteenth Amendments. The Court will address each claim separately.

11

The First Amendment to the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Nothing in the Complaint implicates this amendment except Plaintiff's prayer for relief which states, <u>inter</u> <u>alia</u>, that Defendants violated his First Amendment rights. Moreover, violations of the First Amendment require governmental action, something that is not mentioned in the Complaint. Thus, all claims based on the First Amendment are dismissed.

The Fifth Amendment to the Constitution provides the following:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. Amend. V. The Sixth Amendment states the following:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. Amend. VI.

12

Both these amendments address actions of the Government. TAI and its employees are private actors. Plaintiff has failed to state a claim under the Fifth and Sixth Amendments, and all claims based on the Fifth and Sixth Amendments are dismissed.

The Ninth Amendment to the Constitution provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." As with the First Amendment claims, Plaintiff only invokes the Ninth Amendment in his prayer for relief. The Ninth Amendment merely stands for the proposition that Americans have rights other than those enumerated in the Constitution. Plaintiff has not stated a claim under this amendment. Thus, Plaintiff's claims under the Ninth Amendment are dismissed.

The Thirteenth Amendment states that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." The Fourteenth Amendment provides, in pertinent part, the following:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the

13

> State wherein they reside. No State shall make or enforce any law
> which shall abridge the privileges or immunities of citizens of the
> United States; nor shall any State deprive any person of life, liberty,
> or property, without due process of law; nor deny to any person
> within its jurisdiction the equal protection of the laws.

U. S. Const. Amend. 14. The Fourteenth Amendment "erects no shield against

merely private conduct, however discriminatory or wrongful." United States v.

Morrison, 529 U.S. 598, 621 (2000) (citation omitted).

Nothing in the Complaint alleges slavery or involuntary servitude. To the

extent Plaintiff was not earning PTO as he thought he should, any harm involved

does not implicate the Thirteenth Amendment. Furthermore, the Complaint does

not state a claim under the Fourteenth Amendment because Plaintiff is not

arguing that there was any State or governmental action in his case. TAI and its

employees are private actors. Therefore, Plaintiff has failed to state claims under

the Thirteenth and Fourteenth Amendments and these claims are dismissed.

### 4.    Violations Based on 42 U.S.C. §§ 1983 and 1985(3)

42 U.S.C. § 1983 prohibits State actors from infringing upon individuals'

constitutional rights. To establish a claim under § 1983, a plaintiff must show that

the improper conduct "was committed by a person acting under color of state law"

and that the "conduct deprived a person of rights, privileges, or immunities

14

secured by the Constitution or laws of the United States." Dubose v. Kelly, 187

F.3d 999, 1002 (8th Cir. 1999).

There is nothing in the Complaint that indicates that the TAI Defendants

are State actors. Thus, Plaintiff has failed to state a cause of action under 42 U.S.C.

§ 1983, and these claims are dismissed.

Section 1985(3) provides the following:

> If two or more persons in any State or Territory conspire . . . for the
> purpose of depriving, either directly or indirectly, any person or class
> of persons of the equal protection of the laws, or of equal privileges
> and immunities under the laws; . . . . in any case of conspiracy set
> forth in this section, if one or more persons engaged therein do, or
> cause to be done, any act in furtherance of the object of such
> conspiracy, whereby another is . . . deprived of having and exercising
> any right or privilege of a citizen of the United States, the party so
> injured or deprived may have an action for the recovery of damages.

42 U.S.C. § 1985(3).  In order to prove the existence of a civil rights conspiracy

under § 1985(3), Plaintiff must prove the following:

> (1) that the defendants did "conspire," (2) "for the purpose of
> depriving, either directly or indirectly, any person or class of persons
> of equal protection of the laws, or equal privileges and immunities
> under the laws," (3) that one or more of the conspirators did, or
> caused to be done, "any act in furtherance of the object of the
> conspiracy," and (4) that another person was "injured in his person or
> property or deprived of having and exercising any right or privilege
> of a citizen of the United States."  . . .  The "purpose" element of the

conspiracy requires that the plaintiff prove a class-based "invidiously discriminatory animus."

Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (citations omitted).  A plaintiff must allege facts with specificity and particularity to support the claim that the defendants reached an agreement to deny him his rights. Id. To satisfy this burden, a plaintiff can point to facts that suggest that the defendants reached an understanding to violate his rights. Id. Section 1985(3) does not apply to all "tortious conspiratorial interferences with the rights of others." Griffin v. Breckenridge, 403 U.S. 88, 101 (1971). Rather, to state a conspiracy claim under § 1985(3), a plaintiff must allege "some racial, or otherwise class-based, invidiously discriminatory action behind the conspirators' actions." Id. at 102; Vaughn v. City of North Branch, No. 00-2370, 2001 WL 1640135, at *9 (D. Minn. Oct. 30, 2001) (unpublished opinion). The depravation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3) because Congress intended for Title VII plaintiffs to go through the administrative process before taking judicial action. Great American Fed. Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 378 (1979).

A corporate entity cannot conspire with itself through its agents when the acts of the agents are within the scope of their employment. Larson, 76 F.3d at

1456 n.6 (citation omitted); <u>Runs After v. United States</u>, 766 F.2d 347, 354 (8th

Cir. 1985) (holding that when individual defendants were all members of the

Tribal Council and acted in their official capacities, the intracorporate conspiracy

doctrine applied and "[t]he Tribal Council as an entity or governmental body

cannot conspire with itself"). However, "an intracorporate conspiracy may be

established where individual defendants are . . . named and those defendants act

outside the scope of their employment for personal reasons." <u>Garza v. City of

Omaha</u>, 814 F.2d 553, 556-57 (8th Cir. 1987).

> The only portion of the Complaint that implicates § 1985(3) follows:

> In July of 2003, Ms. Linscheid and one female employee, Peggy
> conspired and attempted to violate Plaintiff's equal protection by
> make [sic] false unfounded allegation [sic] of sexual harassment
> against Plaintiff. Ms. Linscheid aided and abetted Peggy and refused
> to divulge the employee's information to Plaintiff to pursue a false,
> reckless and malicious allegation against him despite severally [sic]
> written requests to that effect. . . . Ms. Linscheid imposed
> employment restrictions against Plaintiff and forbade him from
> working at the Program site thus affecting him adversely, even
> though she knew the allegations were false, reckless and maliciously
> made to get even with the Plaintiff.

(Compl. ¶¶ XLII-XLIII.) In his prayer for relief, Plaintiff also states that there

existed a civil conspiracy "between all defendants individually and collectively in

violating and conspiring to violate" Plaintiff's constitutional rights. (Compl. at 18-

19.) Looking at the Complaint in the light most favorable to Plaintiff, he has failed to state a claim upon which relief can be granted.

It seems Plaintiff feels he was not allowed to work at a certain program sites because of his race. However, even if Defendants Linscheid and Peggy fabricated a false allegation of sexual harassment against Plaintiff, that kind of a work dispute does not implicate § 1985(3). See Griffin, 403 U.S. at 102; Deretich v. Office of Admin. Hr'gs, 798 F.2d 1147, 1153 (8th Cir. 1986) (stating that 1985(3) does not provide "a general avenue of relief for an employee with grievances against his employer"). The Complaint states that Linscheid and Peggy were motivated by a desire "to get even with Plaintiff," not by a desire to discriminate against Plaintiff because of his race or national origin. This does not indicate the type of discriminatory animus necessary to maintain a cause of action under 1985(3). Moreover, there is nothing in the Complaint that indicates that Linscheid and Peggy reached some kind of understanding to violate Plaintiff's rights. In addition, when Ms. Linscheid kept Plaintiff from working at a certain site, and when she refused to give Plaintiff the name of the person who allegedly made allegations of sexual harassment against Plaintiff, she was acting within her official capacity. Lastly, any alleged civil conspiracy between "all defendants" is not alleged with any specificity or particularity. Rather, any such claim seems based on the same

18

conduct upon which Plaintiff bases his Title VII claims. Plaintiff may not use §

1985(3) as a way to circumvent Title VII's exhaustion requirement. Thus, Plaintiff

has failed to state a claim under 42 U.S.C. § 1985(3), and all claims under this

statute are dismissed.

### 5.   Claims Against Individuals

Plaintiff claims that all violations have been perpetrated by Defendants

"individually and collectively." Since the Court is dismissing all Plaintiff's federal

law claims, it need not decide if Defendants can be held liable for federal law

violations in their individual capacities.

### C.   State Law Claims

 "[W]hen the federal-law claims have dropped out of the lawsuit in its early

stages and only state-law claims remain, the federal court should decline the

exercise of jurisdiction by dismissing the case without prejudice." Boldthen v.

Indep. Sch. Dist. No. 2397, 865 F. Supp. 1330, 1340 (D. Minn. 1994) (citing

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). Because the Court is

dismissing Plaintiff's federal law claims, it declines to exercise jurisdiction over Plaintiff's state law claims.

### D.   **Defendants' Request for Costs and Fees**

Defendants seeks costs and fees associated with bringing this motion. Defendants cite Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) for the proposition that if a plaintiff's claims are frivolous, unreasonable, or without foundation, costs and fees should be awarded.

The Court cannot say that Plaintiff's claims were clearly frivolous, unreasonable, or without foundation. In fact, the Court has not even analyzed several of Plaintiff's claims. This part of Defendants' motion is denied.

### E.   **Request to Strike Plaintiff's Memorandum in Opposition**

In their Reply Memorandum, Defendants ask that the Court strike Plaintiff's opposition because it exceeds the page limits authorized by the Local Rules. This request is denied.

### F.   **Plaintiff's Motions**

In his opposition to Defendants' motion, Plaintiff included three motions in his papers. Since the Court is dismissing Plaintiff's federal claims and is declining to exercise jurisdiction over Plaintiff's state claims, this case will be dismissed in its entirety. Thus, Plaintiff's motion for preliminary relief and motion to appoint counsel are denied as moot.

Plaintiff also filed a motion to sanction Defendants for filing a frivolous motion and for wasting the Court's time and resources on this matter. The Court finds that Defendants' motion is not frivolous, and is not a waste of judicial resources. To the contrary, the Court has effectively dismissed this case because of Defendants' motion. Accordingly, Plaintiff's motion is denied.

Also pending before the Court, but not yet scheduled for oral argument, is Plaintiff's Motion for Default Judgment Against the Department of Employment and Economic Development, Rule 55, Motion to Strike Defendants Larson et al. Reply Memorandum for Redundancy, Scurrilous, Untimely Filing, and Motion for Summary Judgment. [Doc. No. 17.] Since the Court is dismissing all claims in this case, this motion is denied as moot.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss the Complaint For Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) [Doc. No. 8.] is **GRANTED IN PART** and **DENIED IN PART** as set forth in this memorandum;

   a. Defendants' Motion is **GRANTED** as to a refusal to exercise jurisdiction over Plaintiff's claim for unemployment benefits;

   b. Defendants' Motion is **GRANTED** as to Plaintiff's claims under the Family and Medical Leave Act;

   c. Defendants' Motion is **GRANTED** as to Plaintiff's Title VII claims;

   d. Defendants' Motion is **GRANTED** as to Plaintiff's Constitutional claims;

   e. Defendants' Motion is **GRANTED** as to Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3);

   f. Defendants' request for costs and fees is **DENIED**; and

g. Defendants' request to Strike Plaintiff's Memorandum in Opposition is **DENIED**;

2. Plaintiff's Motion for Preliminary Relief [No Doc. No.] is **DENIED AS MOOT**;

3. Plaintiff's Motion to Appoint Counsel [No Doc. No.] is **DENIED AS MOOT**;

4. Plaintiff's Motion for Sanctions [No Doc. No.] is **DENIED**;

5. Plaintiff's Motion for Default Judgment Against the Department of Employment and Economic Development, Rule 55, Motion to Strike Defendants Larson et al. Reply Memorandum for Redundancy, Scurrilous, Untimely Filing, and Motion for Summary Judgment [Doc. No. 17] is **DENIED AS MOOT**;

6. Plaintiff's Family and Medical Leave Act claims are **DISMISSED WITH PREJUDICE**;

7. Plaintiff's Title VII claims are **DISMISSED WITH PREJUDICE**;

8. Plaintiff's Constitutional claims are **DISMISSED WITH PREJUDICE**;

9. Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3) are **DISMISSED WITH PREJUDICE**; and

10. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 21, 2005

s/ Michael J. Davis
Michael J. Davis
United States District Court